# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| VICKY CHALISA HAIRSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:11-CV-57 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Vicky Chalisa Hairston ("Hairston") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding her not disabled and therefore ineligible for both supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, ("Act"), 42 U.S.C. §§ 1614(a)(3)(A); 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda and argument of counsel and the applicable law, and conclude that substantial evidence supports the ALJ's decision. As such, I **RECOMMEND DENYING** Hairston's motion for summary judgment (Dkt # 11), and **GRANTING** the Commissioner's motion for summary judgment (Dkt # 14).

**STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Hairston failed to demonstrate that she was disabled under the Act. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Hairston bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education and work experience. See 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Hairston was born on June 24, 1965 (Administrative Record, hereinafter "R." 128) and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c)(2011). Hairston's date last insured is December 31, 2005, and thus, she must show that her disability began before that date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). To receive SSI benefits, Hairston must establish that her disability began on or after the date she applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R. § 416.501.

Hairston completed high school, and was in special education cases. R. 16, 35. She worked from 1995 to 2000 as an employee in the dining room of a retirement home. This job

was evaluated by the vocational expert as semi-skilled, medium work. R. 47. Hairston left this job in 1999 when she injured her knees. R. 36. Hairston reported that during the relevant period, her daily activities involved soaking in the tub, watching TV, reading, and being driven to the park by her family. R. 154.

## Claim History

On November 3, 2008, Hairston filed for SSI and DIB, claiming that her disability began on December 30, 2005, due to problems with her knees, back and depression. R. 15-16, 111, 132. The state agency denied her application at the initial and reconsideration levels of administrative review. R. 5, 67. On March 1, 2010, ALJ Charles Boyer held a hearing to consider Hairston's disability claim. R. 32. Hairston was represented by counsel at the hearing, which included testimony from vocational expert Robert Jackson. R. 34-50.

On June 7, 2010, the ALJ entered his decision denying Hairston's claims for DIB and SSI. R. 13-27. The ALJ found that Hairston is obese and has severe degenerative disc disease and history of work-related knee injury. R. 16. Considering these impairments, the ALJ found that Hairston retained the RFC to perform a full range of sedentary work.[1] R. 24. The ALJ determined that Hairston was not capable of performing her past relevant work, but that transferability of job skills is not an issue because she was not disabled under Medical-Vocational Rule 201.28. R. 27.

On August 2, 2010, Hairston submitted to the Appeals Council records from the Bedford Christian Free Clinic dated February 19, 2010 through July 21, 2010. R. 709-718. On August

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) and 416.967(a).

4

30, 2011, Hairston also submitted to the Appeals Council a Physical Residual Functional Capacity form completed by Gautham Gondi, M.D., dated August 10, 2011. R. 720-25. On December 7, 2011, the Appeals Council made this additional evidence a part of the record, but denied Hairston's request for review. R. 1-4. This appeal followed.

## ANALYSIS

Although Hairston raises several arguments in her Brief in Support of Motion for Summary Judgment, her claims were narrowed to a single issue during the hearing before this court; namely, whether substantial evidence supports the ALJ's decision that Hairston can perform a full range of sedentary work, and thus, the ALJ did not err by relying upon the Medical-Vocational guidelines (hereinafter "grid tables") to find Hairston not disabled. Hairston contends that she has certain non-exertional limitations which affect her functional capacity and which would require a vocational expert to determine if substantial jobs exist which Hairston could perform.

The Commissioner bears the burden at step five to show the existence of a significant number of jobs in the national economy that a claimant can perform given his or her RFC. To aid in making this determination, the Commissioner promulgated the grid tables located at 20 C.F.R. Part 404, Subpart P, Appendix 2. Washington v. Astrue, 698 F. Supp. 2d 562, 571 (D.S.C. 2010). The grids are tables that "indicate the proper disability determinations for various combinations of age, education, and previous work experience in conjunction with the individual's residual functional capacity…" Hall v. Harris, 685 F.2d 260, 265 (4th Cir. 1981). Each grid, however,

> considers only the strength or exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his disability. Thus, in cases where pain occurs only upon exertion and limits one's strength

5

> functioning, the grid tables will apply. But when a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines.

Walker v. Bowen, 889 F.2d 47, 49 (4th Cir.1989) (citing Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)); see 20 C.F.R. § 404.1569a(d). When the Commissioner is unable to rely on the grids in making the step five determination, he must use a vocational expert to prove that jobs exist in the national economy which the claimant can perform. Walker, 889 F.2d at 49–50.

The Fourth Circuit has held that "not every non-exertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids. Grant v. Schweiker, 699 F.2d 189 (4th Cir.1983). The proper inquiry under Grant is to determine whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." Walker, 889 F.2d at 49. If so, the Commissioner may properly rely on the grids to sustain the burden at step five of proving the existence of jobs the plaintiff can perform. Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985). Thus, the first step under Grant requires the ALJ to determine whether the claimant has a nonexertional impairment. This is defined as a nonexertional condition which affects a claimant's residual functional capacity to perform work which he physically can perform. Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984). This inquiry is a question of fact and is therefore reviewed by this court only to evaluate if the finding is supported by substantial evidence. Long v. Apfel, 2000 WL 1469542 (W.D. Va. Aug. 23, 2000).

Hairston argues that the ALJ's use of the grids was improper because the evidence demonstrates that Hairston has both exertional and nonexertional limitations which would erode her ability to perform the full range of sedentary work. Specifically, Hairston argues that she

6

suffers from a cervical impairment with upper extremity radiculopathy which erodes her ability to perform the full range of sedentary work. Hairston also argues that she suffers from nonexertional limitations related to her knees such as squatting, bending, kneeling, crawling, and avoiding heights and hazards.

## **Medical Evidence**

The record contains multiple opinions regarding Hairston's functional capacity before and during the alleged period of disability. Hairston stopped working in 1999 when she sustained a work related injury to both of her knees. She sought treatment from Gotham Gondi, M.D., from September 19, 2001 through November 11, 2005, for bilateral knee pain secondary to bilateral knee chondromalacia patella. R. 366-385, 393-514. In 2002 and 2003, Hairston underwent arthroscopic surgery on both knees. On June 16, 2004, Dr. Gondi found that Hairston had reached her maximum medical improvement, and was capable of returning to medium work activities. R. 440-42. On July 28, 2004, Dr. Gondi restricted Hairston to light work, limiting her to lifting 20 lbs maximum, and 10 lbs frequently, and avoiding kneeling and squatting. R. 433.

On January 5, 2006, Marla Armstrong, M.D., performed an independent functional capacity evaluation on Hairston, and found that she was capable of sedentary work, with limitations on sitting, squatting lifting, bending and crawling. R. 678-79.

On May 2, 2006, Hairston underwent a functional capacity evaluation by Barbara Suter, P.T., who noted that Hairston gave less than full effort, and had "minor" inconsistencies between her subjective reports of pain/limitation and objective findings. Ms. Suter concluded that Hairston could perform sedentary work. She noted that Hairston had good tolerance for intermittent sitting, standing, occasional stair climbing, low level balancing, stooping, above

7

shoulder level work, reaching forward, fine motor coordination, gripping and pinching. She found that Hairston had poor tolerance for upper level balancing with vision occluded, repetitive squatting, and low level work.[2] R. 655-57.

On June 13, 2006, Hairston was examined by Brant Hotzmeier, D.O., with regard to her bilateral knee pain. Dr. Hotzmeier found that Hairston had a permanent disability in her knees, and that additional surgery was not indicated. Dr. Hotzmeier recommended bracing, exercise, anti-inflammatory medication, weight loss and range of motion strengthening. R. 649-51.

On February 5, 2009, state agency medical consultant William S. Humphries, M.D., examined Hairston. Dr. Humphries found that Hairston was capable of sitting six hours in an eight hour workday, lifting 25 lbs occasionally, and 10 lbs frequently. He recommended that Hairston avoid climbing, kneeling, crawling, heights and hazards. R. 231-236.

On February 13, 2009, state agency physician Thomas Phillips, M.D., completed a functional capacity evaluation, and found that Hairston was capable of light work that involved occasional balancing, stooping, crouching, and climbing ramps and stairs; never kneeling, crawling, or climbing ladders, ropes, or scaffolds; no exposure to moderate workplace hazards (unprotected heights, moving machinery, etc); and no exposure to concentrations of respiratory irritants. R. 237-41. On August 17, 2009, state agency physician Joseph Duckwall, M.D., completed a functional capacity evaluation and agreed with Dr. Phillips's assessment. R. 269-73.

On August 10, 2011, over a year after the ALJ's decision in this case, Dr. Gondi completed a residual functional capacity report, and found that Hairston is capable of low stress jobs, although her pain or other symptoms will interfere with her attention and concentration

---

[2] Although physical therapists are not technically "acceptable medical sources," evidence from such sources may be used to show the severity of an individual's impairment and how it affects the individual's ability to function. Social Security Ruling 06-03p.

8

occasionally during a typical workday. He stated that Hairston can sit for 45 minutes at a time, stand for 45 minutes at a time, stand/walk less than two hours in an eight hour workday, sit at least six hours in an eight hour workday, and must be able to shift positions at will. He further found that Hairston can never carry more than 10 lbs, occasionally carry less than 10 lbs, and rarely crouch, squat, climb ladders and stairs. R. 721-25.

Based upon the medical opinion evidence set forth above (aside from Dr. Gondi's August 10, 2011 opinion, submitted after the ALJ's decision), the ALJ concluded that Hairston has the RFC to perform the full range of sedentary work. R. 25-26. In his opinion, the ALJ generally adopted the assessments of the state agency and consulting physicians that Hairston could perform sedentary work. However, the ALJ did not adopt the nonexertional limitations included in the state agency assessments, noting that: 1) the nonexertional limitations identified by the state agency physicians did not significantly affect Hairston's capacity for sedentary work; 2) the record contains multiple treating source statements indicating that Hairston could perform the full range of sedentary work and a wide range of light work; and, 3) the record contains a functional capacity assessment finding that Hairston can perform the full range of sedentary work. R. 25. Considering the record as a whole, including the additional evidence submitted by Hairston to the Appeals Council, I find substantial evidence to support the ALJ's finding that Hairston can perform the full range of sedentary work, and thus, substantial evidence to support his reliance upon the grids at step five of the analysis.

## **Neck/Upper Extremity Impairments**

Hairston alleges that the ALJ failed to consider her neck and upper extremity impairments and the effect they would have on her ability to perform the full range of sedentary

9

work. Hairston relies upon her self-reported statements that she has difficulty with reaching and using her hands. R. 39, 40, 159, 181. Hairston also points to medical records noting her history of chronic neck pain, and diagnosis of a herniated disc at C5-6. R. 360-65, 555-56.

Upon my review of the evidence, I find that the ALJ properly relied upon the opinions of Drs. Humphries, Phillips and Duckwall in finding that Hairston did not have neck or upper extremity impairments that would interfere with her ability to perform the full range of sedentary work. As the ALJ notes in his opinion, no treating, examining, or reviewing medical source found that Hairston was more limited than the RFC determined by the ALJ.

In his consultative report, Dr. Humphries noted that Hairston had a slightly reduced range of motion in her neck, mild tenderness to palpation at the base posterior of her cervical spine, and reduced joint range of motion in both shoulders. He noted no significant tenderness, heat, swelling or deformity in her elbows, wrists and hands. R. 234-236. Dr. Humphries did not include any manipulative limitations in his recommended RFC. R. 236. Likewise, Drs. Phillips and Duckwall found that Hairston had no limitations in her ability to push and/or pull with her upper extremities, and no manipulative limitations. R. 238-39, 270-71. Significantly, Dr. Gondi, Hairston's treating physician, stated in his physical residual capacity questionnaire dated August 10, 2011, that Hairston had no manipulative limitations, and could frequently flex her neck, turn her head, look up, and hold her head in a static position. R. 724. Based on the above, I find substantial evidence in the record to support the ALJ's finding that Hairston did not have any neck or upper extremity impairments that would interfere with her ability to perform the full range of sedentary work.

## **Non-Exertional Impairments**

Hairston also argues that she suffers from non-exertional limitations related to her knees, such as squatting, bending, kneeling, crawling, and avoiding heights and hazards, that prevent her from performing the full range of sedentary work. There is no question that Hairston suffers from degenerative disc disease and work-related knee injury, which limit her ability to squat, lift, bend, crawl, kneel, and work safely around heights and hazards. The issue related to these non-exertional limitations is whether they affect Hairston's functional capacity to engage in sedentary work. Rogers v. Barnhart, 204 F. Supp. 2d 885, 895 (W.D.N.C. 2002); Baker v. Chater, 957 F.Supp. 75, 81 (D.Md.1996). I find substantial evidence to support the ALJ's conclusion that the non-exertional limitations recommended by the examining and reviewing physicians would not erode Hairston's ability to perform the full range of sedentary work.

Sedentary is the most restrictive level of work. It involves lifting no more than 10 pounds at a time, occasional lifting and carrying of objects like files and small tools, and occasional walking and standing. §§ 20 C.F.R. 404.1567(a), 416.967(a). Given the very nature and definition of sedentary work, restrictions on bending, squatting, crawling, kneeling, heights and hazards generally would not affect Hairston's ability to perform her job. As stated by the ALJ, these restrictions will not "significantly affect the capacity for sedentary work." R. 25.

Additionally, Hairston's treatment records support the ALJ's conclusion that she can perform the full range of sedentary work. Hairston's treating knee specialist, Dr. Gondi, released Hairston to light work prior to her alleged onset date (R. 433), and as the ALJ notes, there is little evidence of significant deterioration in Hairston's functional status since that date. On June 13, 2006, Dr. Hotzmeier examined Hairston and found that she was not a candidate for further

11

surgery on her knees. He noted that she had a severe, permanent knee impairment, and recommended bracing, toning, anti-inflammatory medication, weight loss and range of motion strengthening. R. 649-51. On November 8, 2006, Hairston's physical therapist released her to return to a sedentary job position. R. 637-38. On February 22, 2007, Hairston's physical therapist noted that Hairston made steady gains, that squatting is hard, she can tolerate walking approximately one hour, and sitting approximately one hour at a time, and that she is capable of gainful employment. R. 557-58.

The other opinion evidence in the record supports the ALJ's RFC as well. Dr. Armstrong performed an independent functional capacity evaluation on January 5, 2006, and found that, although Hairston was restricted to limited squatting, bending, lifting and crawling, she was capable of performing sedentary work. R. 678. Likewise, on May 2, 2006, Barbara Suter, P.T., found that Hairston was able to work at the sedentary strength range, had "good" tolerance for stairs, low-level balance, stooping, and "fair" tolerance for squatting during short durations. R. 655-57. Additionally, the state agency consulting and reviewing physicians all found that Hairston was capable of sedentary work, despite her non-exertional limitations. Thus, I find that substantial evidence supports the ALJ's conclusion that Hairston is capable of performing the full range of sedentary work.

## Additional Evidence Submitted to Appeal's Council

Hairston also argues that the case should be remanded to the ALJ for consideration of Dr. Gondi's residual functional capacity report dated August 10, 2011, submitted to the Appeals Council after the ALJ's decision. The Appeals Council considered Dr. Gondi's report, and found that it did not "provide a basis for changing the Administrative Law Judge's decision." R. 2.

When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991.) Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id. The Appeals Council was not, however, required to provide express, specific findings on the record regarding the additional evidence submitted by Hairston. As the Fourth Circuit clarified in Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011), "nothing in the Social Security Act or the regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." In this case, the Appeals Council's consideration of the additional evidence submitted by Hairston and denial of review met its obligations under the agency's regulations.

When the Appeals Council denied Hairston's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. When determining whether substantial evidence supports the Commissioner's decision, the court must review the record as a whole, including the new evidence incorporated into the administrative record by the Appeals Council. Wilkins, 953 F.2d at 96. Thus, the court must review the record as a whole, including Dr. Gondi's report, to determine if substantial evidence supports the Commissioner's decision, or if Dr. Gondi's report is new, material evidence that relates to the period in question, and thus should be considered by the Commissioner on remand.

After reviewing the record as a whole, I find that Dr. Gondi's report does not require remand because it is neither new nor material evidence. Dr. Gondi's opinion is not new because

13

it is based entirely upon his treatment notes which were included in the record before the ALJ, and considered by the ALJ in forming his decision. Indeed, the record reflects that Dr. Gondi last examined Hairston on November 11, 2005, prior to her alleged disability onset date. R. 395. There is no indication in the record that Dr. Gondi examined Hairston after that date.

I also find that Dr. Gondi's opinion is not material. Dr. Gondi's opinion is based upon treatment notes that end prior to the alleged disability onset date in this case. Dr. Gondi released Hairston to light work in July 2004 (R. 433), and there is little evidence of significant deterioration in Hairston's functional status since that date. Further, Dr. Gondi's recommended RFC is only slightly more restrictive than those of Drs. Armstrong and Humphries. R. 232-36, 678-79. With regard to Hairston's particular arguments in this case, Dr. Gondi's opinion imposes no limitations on Hairston's reaching, handling, fingering or flexion of the neck. R. 724. Dr. Gondi's opinion also imposes no more restrictive non-exertional limitations than those present in the record before the ALJ. R. 721-25. Consequently, I find no reasonable probability that Dr. Gondi's RFC report would have changed the ALJ's decision in this case.

## Conclusion

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, I find that substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Hairston is totally free from any distress. The objective medical record simply fails to document the existence of any physical and/or mental conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the

14

ALJ properly considered all of the objective and subjective evidence in adjudicating Hairston's claim for benefits and in determining that her physical impairments would not prevent her from performing the full range of sedentary work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, I conclude that the Commissioner's decision must be affirmed and the defendant's motion for summary judgment **GRANTED**; and Hairston's motion for summary judgment **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: July 10, 2013

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge