IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| VICKY CHALISA HAIRSTON,<br>*Plaintiff*,<br><br>v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,<br>*Defendant*. | CASE NO. 6:11–cv–00057<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross Motions for Summary Judgment (docket nos. 11 and 14), the Report & Recommendation of United States Magistrate Judge Robert S. Ballou (docket no. 19 [hereinafter "R&R"]), and Plaintiff's Objections to the R&R (docket no. 20). Pursuant to Standing Order 2011 – 17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to the Magistrate Judge for proposed findings of fact and a recommended disposition. The Magistrate Judge filed his R&R, advising this Court to deny Plaintiff's Motion for Summary Judgment, and grant the Commissioner's Motion for Summary Judgment. Plaintiff timely filed her Objections, obligating the Court to undertake a de novo review of those portions of the R&R to which objections were made. *See* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). For the following reasons, I will overrule Plaintiff's Objections and adopt the Magistrate Judge's R&R in full.

1

## I. BACKGROUND

On November 3, 2008, Plaintiff Vicky Chalisa Hairston ("Plaintiff") filed an application for Disability Insurance Benefits ("DIB") and an application for Supplemental Security Income ("SSI") payments under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–433, 1381–1383f. Plaintiff's last insured date was December 31, 2005, and thus to receive DIB benefits, she must show that her disability began before that date and existed for twelve continuous months. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). To receive SSI benefits, Plaintiff must show that her disability began on or after the date she applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R. § 416.501.

Plaintiff was born on June 24, 1965, and was forty-three years old at the time she filed her November 2008 applications. Plaintiff claimed that her disability began on December 30, 2005, due to problems with her knees, back, and depression. *See* Administrative Record 15–16, 111, 132 [hereinafter "R."]. Before 2005, Plaintiff completed high school through the attendance of special education classes. R. 16, 35. She worked from 1995 to 2000 in the dining room of a retirement home, doing what a vocational expert described as semi-skilled, medium work, until 1999, when she injured her knees. R. 36, 47. Plaintiff reported that during the relevant period of her disability, her daily activities included soaking in the tub, watching TV, reading, and being driven to the park by her family. R. 154. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### A. The ALJ Decision

The state agency denied Plaintiff's application at the initial and reconsideration levels of administrative review (R. 5, 67), and on March 1, 2010, Administrative Law Judge ("ALJ") Charles Boyer held a hearing to consider Plaintiff's disability claim. R. 32. Plaintiff was

represented by counsel, and an independent vocational expert testified as well. R. 34–50. During the hearing, Plaintiff testified that she suffers from chronic knee and back pain. She said, due to her ailments, that she can only sit for about thirty minutes to an hour at one time. R. 40. Plaintiff also testified that using her crutches or walker caused pain in her neck, hands, and shoulder, which affected the use of her hands and ability to write for more than 30–40 minutes at a time. R. 39–40. Plaintiff said she can only perform small tasks at home, is awakened at night by pain in her leg, must sit to cook, and avoids climbing, stooping, bending, and reaching to prevent pain and injury. R. 40–41.

Determining disability, and thus eligibility for Social Security benefits, involves a five-step inquiry. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). In this process, the Commissioner asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe, meaning the impairments significantly limit the claimant's ability to perform basic work activities; (3) the claimant's medical impairment meets or exceeds the criteria of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) the claimant has the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant has the RFC to perform other specified types of work. *See Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The claimant has the burden of production and proof in Steps 1–4. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). At Step 5, the burden shifts to the Commissioner "to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience." *Id.* If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2005, and that Plaintiff had not engaged in substantial gainful activity since December 30, 2005, the alleged onset date. Next, the ALJ found the Plaintiff is obese (5'7" and 235 pounds), and has a severe musculoskeletal impairment – degenerative disc disease and a history of work-related knee injury. R. 15–16. Based on the medical evidence on record, the ALJ concluded that Plaintiff retained the ability to perform sedentary work, and that her impairments did not significantly limit her capacity for that work. R. 24. He also found Plaintiff lacked a mental impairment that would impose significant work-related limitations or prove severe under the Act and its regulations. R. 24.

At step three of the disability analysis, relying on the assessment of Disability Determination Services ("DDS") and additional records submitted by Plaintiff, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 24. The ALJ further found, at step 4 of the analysis, that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). R. 25.

The ALJ reached this finding by adopting the DDS assessments as consistent with other credible evidence in the record. He did not adopt DDS assessments of Plaintiff's non-exertional limitations, because he found they did not significantly affect Plaintiff's capacity for sedentary work, as supported by physicians' statements in the record authorizing sedentary and sometimes light work for Plaintiff. R. 25. The ALJ found Plaintiff's statements were "not entirely credible as they relate[d] to the intensity, persistence and limiting effects" of her symptoms – in other words, the ALJ found her limitations "would not reasonably limit Plaintiff's capacity for sedentary work." R. 25. Finally, the ALJ found that, although Plaintiff was not capable of

performing her past relevant work, she also would not qualify as disabled, even if she had no past relevant work. R. 26.

In the fifth and final step of the disability analysis, the ALJ found the transferability of Plaintiff's job skills from her past relevant work was not material to the determination of disability, because she retained the RFC to perform sedentary work at all relevant times and thus qualifies as "not disabled." R. 26–27 (citing SSR 82-41, 1975–1982 Soc. Sec. Rep. Serv. 847, & 20 C.F.R. Part 404, Subpart P, App. 2). Therefore, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 30, 2005, through the date of [his decision]." R. 27.

On December 7, 2011, the Appeals Council made additional evidence Plaintiff submitted to the Council part of the record, including 2010 records from the Bedford Christian Free Clinic, and an August 10, 2011 Physical Residual Functional Capacity form by Gautham Gondi, M.D. R&R 5. But on December 7, 2011, the Appeals Council also denied Plaintiff's request for review. R. 1–4. Plaintiff filed the instant suit on December 21, 2011, seeking judicial review of the Commissioner's final decision.

### B. The Summary Judgment Motions

In her May 17, 2012 memorandum, Plaintiff contends that the ALJ's decision was in error because his RFC determination is not supported by substantial evidence. *See* Pl.'s Mem. in Supp. 9. Plaintiff argues the ALJ failed to consider the effect of nonexertional limitations stemming from neck and upper extremity impairments on her ability to perform the full range of sedentary work. *Id.* Furthermore, Plaintiff contends the ALJ did not properly consider non-exertional limitations imposed by her knee impairments. *Id.* at 11, 15–16. Finally, Plaintiff argues the evidence supports a finding that nonexertional limitations erode her ability to perform

the full range of sedentary work; thus, the ALJ erred in relying on the grid tables ("Grids"), *see* 20 C.F.R. Part 404, Subpart P, Appendix 2, in finding she is not disabled and in denying her claim. *Id.* at 16. Plaintiff offers the August 10, 2011 RFC report by Dr. Gondi ("Dr. Gondi's Report") as showing that her exertional and nonexertional limitations erode her ability to perform the full range of sedentary work. *Id.* at 16. This report was submitted to the Appeals Council and made part of the record, but never considered by the ALJ because it was created after he adjudicated Plaintiff's case. Plaintiff requests a remand of her case to the Commissioner to consider Dr. Gondi's Report, which she argues is new, material, and has a reasonable probability of changing the outcome of the Commissioner's final decision. *Id.* at 16–19.

In response, Defendant argues the ALJ properly considered Plaintiff's neck and upper extremity impairments, and substantial evidence supports his finding that they do not significantly impair Plaintiff's ability to perform the full range of sedentary work. Def.'s Mem. in Supp. 10. Defendant comments that most of Plaintiff's evidence on these issues predates her alleged onset date, she relies on her own statements that the ALJ found not entirely credible, and the assessments of a consultative examiner and state agency physicians provide substantial evidence to support the ALJ's finding. *Id.*

Defendant also contends the ALJ properly relied on the Grids to find Plaintiff was not disabled. *Id.* at 11. Defendant points to the ALJ's findings that Plaintiff's treating specialist released her to sedentary and light work before the alleged onset date, with no "credible evidence of significant deterioration in her medical condition or functional status" since that time. *Id.* The ALJ also remarked, as Defendant reiterates, that Plaintiff had not pursued aggressive therapies or undergone surgery since the time of her release to light and sedentary work. *Id.* Thus, Defendant argues the ALJ's decision to rely on the Grids is warranted, since Plaintiff could not

prove her nonexertional limitations would erode her ability to perform the full range of sedentary work. *Id.*

Finally, Defendant advocates no remand is necessary for the Commissioner to consider Dr. Gondi's Report. According to Defendant, the report is neither new, in that Plaintiff's attorney could have obtained it and submitted it to the ALJ prior to the date of his decision, nor material, because it lacks corroboration by clinical evidence and treatment notes. *Id.* at 12–13.

### C. The Magistrate Judge's Report and Recommendation

Magistrate Judge Robert S. Ballou recommends denying Plaintiff's motion for summary judgment and granting the Commissioner's motion. His R&R addressed Plaintiff's contentions as they were narrowed to one issue in the hearing before him: namely, "whether substantial evidence supports the ALJ's decision that [Plaintiff] can perform a full range of sedentary work, and thus, the ALJ did not err by relying on the [Grids] to find [Plaintiff] not disabled." R&R 5. The Magistrate Judge also considered whether Dr. Gondi's Report warrants remand to the Commissioner, finding it does not because it is neither new nor material, and because there is no reasonable probability it would have changed the ALJ's decision. *Id.* at 12–14.

At issue before the ALJ and Magistrate Judge was whether the Commissioner and ALJ can rely on the Grids to show Plaintiff is not disabled, because the national economy contains sufficient jobs she can perform. At this step of the analysis (step 5), the Commissioner must show a significant number of jobs exist in the national economy that a claimant can perform, given her RFC. *Washington v. Astrue*, 698 F. Supp. 2d 562, 571 (D.S.C. 2010). The Commissioner promulgated the Grids, located at 20 C.F.R. Part 404, Subpart P, Appendix 2, to serve this function and indicate the proper disability determination for claimants. *Id. See also Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). However, the Grids are "not conclusive, but

may only serve as guidelines" when "a claimant suffers from both exertional and nonexertional limitations." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); 20 C.F.R. § 404.1569a(d). If a nonexertional limitation is grave enough to erode a claimant's ability to perform the full range of work of which she is exertionally capable, the Grids cannot be used. *Id.* The Commissioner must use a vocational expert to prove sufficient jobs exist when the Grid does not apply to a claimant. *Id.* at 49–50.

Plaintiff argues her nonexertional limitations erode her ability to perform the full range of sedentary work. Thus, the Commissioner could not properly prove there are sufficient jobs in the national economy that she could perform without the testimony of a vocational expert. In his R&R, the Magistrate Judge noted the ALJ considered the assessments of state agency and consulting physicians that Plaintiff could perform sedentary work, and the ALJ found Plaintiff had the RFC to perform sedentary work. R&R 9. The R&R agrees with Plaintiff that the ALJ did not adopt the nonexertional limitations found by the state agency assessments and pointed out the ALJ's reasoning for doing so. Namely, the ALJ found those limitations did not significantly affect Plaintiff's capacity for sedentary work, multiple treating physicians found Plaintiff capable of the full range of sedentary work and a wide range of light work, and the RFC assessment on record before the ALJ found Plaintiff could perform the full range of sedentary work. *Id.*

Drawing on these findings, the medical evidence considered by the ALJ, Dr. Gondi's Report, and additional evidence submitted by Plaintiff to the Appeals Council, the Magistrate Judge found substantial evidence to support the ALJ's finding that Plaintiff can perform the full range of sedentary work, and thus also substantial evidence supporting his use of the Grids to find Plaintiff is not disabled. *Id.*

The Magistrate Judge likewise found the ALJ properly relied on substantial evidence in finding Plaintiff's nonexertional neck, upper extremity, and knee impairments did not interfere with Plaintiff's ability to perform sedentary work. Thus, the Magistrate Judge found the ALJ was further supported by substantial evidence in relying on the Grids to find, despite these nonexertional limitations, that Plaintiff was not disabled. R&R 9–12. In particular, the Magistrate Judge pointed out that although the ALJ did not adopt state agency consulting and reviewing physicians' reports about Plaintiff's nonexertional limitations, each of those doctors found Plaintiff was capable of sedentary work despite her nonexertional limitations. *Id.* at 12.

Finally, the Magistrate Judge remarked that he considered Dr. Gondi's Report as part of the whole record in determining whether the ALJ's decision was supported by substantial evidence. No remand to the ALJ was required to consider Dr. Gondi's Report, the Magistrate Judge found, because the report was neither new nor material. R&R 14.

In the Fourth Circuit, a claimant can only obtain a remand based on additional evidence submitted to the Appeals Council after the ALJ's decision if that evidence is new and material, relates to the period on or before the date of the ALJ's decision, and it is reasonably likely the new evidence would have changed the outcome of the ALJ's decision. *Wilkins v. Sec'y of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). Dr. Gondi's Report is not "new," the Magistrate Judge held, because it is based entirely upon treatment notes from 2005 and before, all of which the ALJ considered as part of the record before him. R&R 14. The Report is not "material," says the R&R, because it is based only on treatment notes ending on November 11, 2005 (before the disability onset date), Dr. Gondi had released Plaintiff to light work in July 2004 and there is little evidence Plaintiff's RFC deteriorated significantly since that time, and Dr. Gondi's Report imposes no more restrictive nonexertional limitations than those of other

physicians the ALJ considered on the record. *Id.* Consequently, the Magistrate Judge found Dr. Gondi's Report was not likely to change the ALJ's decision about Plaintiff and did not warrant remand. *Id.*

Plaintiff timely filed Objections to the R&R on July 23, 2013, arguing that the Magistrate Judge erred in finding substantial evidence to support the ALJ's conclusion that Plaintiff's nonexertional limitations would not erode her ability to perform the full range of sedentary work. Pl.'s Objections 1–2. Plaintiff claims the Magistrate Judge thus erred in finding substantial evidence to support the ALJ's use of the Grids, and that a vocational expert's testimony is necessary to evaluate her ability to perform sedentary work. *Id.* at 2. Plaintiff also objects to the Magistrate Judge and ALJ's conclusions that Dr. Gondi's Report is not new and material evidence, arguing that her case should be remanded to the Commissioner to consider the report. *Id.* at 2–3.

## II. STANDARD OF REVIEW

A reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is not a large or considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 555 (1988). Rather, it comprises "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)), and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *accord Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).

In determining whether the ALJ's decision was supported by substantial evidence, a reviewing court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig*, 76 F.3d at 589 (citation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id*. (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even if a court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971). Ultimately, the issue before this Court is not whether Plaintiff is disabled, but whether the ALJ's determination is reinforced by substantial evidence, and whether it was reached through correct application of the law. *Craig*, 76 F.3d at 589.

### III. DISCUSSION

As noted above, Plaintiff argues the ALJ's decision is not supported by substantial evidence, primarily because she claims her nonexertional limitations erode her ability to perform the full range of sedentary work. Given that argument, Plaintiff contends the Commissioner never met his burden to prove she is disabled at step 5 of the disability analysis, because when nonexertional limitations erode a claimant's ability to perform a given level of work, the Grids cannot conclusively prove disability (or lack thereof) for that claimant. Therefore, the Plaintiff argues the ALJ's decision is unsupported by substantial evidence, and demands a remand for the Commissioner to present a vocational expert and for the ALJ to consider Dr. Gondi's Report.

### A. ALJ's Consideration of Plaintiff's Nonexertional Limitations

Whether the ALJ's decision is supported by substantial evidence depends, first, on whether there is substantial evidence Plaintiff's nonexertional limitations do not erode her ability to perform the full range of sedentary work. If there is such substantial evidence, the ALJ's use of the Grids is proper, and those Grids provide substantial evidence to support the ALJ's conclusion Plaintiff is not disabled. *See Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *Hammond v. Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985). The determination of whether a claimant suffers from a nonexertional impairment sufficient to preclude use of the Grids is one of fact, and is reviewed by this court only to assess whether that finding is supported by substantial evidence. *Long v. Apfel*, 2000 WL 1469542, at *4 (W.D. Va. Aug. 23, 2000).

I agree with the ALJ's determination that Plaintiff's nonexertional limitations do not rise to the level of nonexertional impairments that would prevent use of the Grids to determine disability at step 5 of the analysis. I have considered the entire record in coming to this conclusion, including Dr. Gondi's Report, the additional evidence Plaintiff submitted to the Appeals Council, and the nonexertional limitations found by the agency consulting and reviewing physicians the ALJ chose not to adopt. *See Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (noting a reviewing court must assess new evidence incorporated into the administrative record by the Appeals Council in determining whether the Commissioner's decision is supported by substantial evidence).

Plaintiff calls to the Court's attention neck and upper extremity limitations, stemming from a cervical impairment with upper extremity radiculopathy. She also claims nonexertional limitations based on knee injuries that prevent squatting, bending, kneeling, crawling, and avoiding things like heights and other hazards in the workplace. The issue before this Court is

whether substantial evidence from the whole record before this Court supports the ALJ's determination that these limitations do not erode Plaintiff's ability to perform sedentary work.

First, the record as a whole includes substantial evidence, over the course of many years, confirming Plaintiff's ability to perform sedentary work. Dr. Gondi treated Plaintiff from 2001 to 2005 for bilateral knee pain secondary to bilateral knee chrondromalacia patella, stemming from a work-related injury to both of her knees in 1999. R. 366–85, 393–514. Surgery was performed on Plaintiff's knees in 2002 and 2003, and by June 16, 2004 Dr. Gondi released Plaintiff to medium work activities. R. 440–42. Dr. Gondi later restricted Plaintiff to light work on July 28, 2004, restricting her to lifting a maximum of 20 lbs, allowing lifting of 10 lbs frequently, and instructed her to avoid kneeling and squatting. R. 433. In January of 2006, this state of affairs remained fairly constant – Marla Armstrong, M.D., found Plaintiff capable of sedentary work after an independent functional capacity evaluation. Dr. Armstrong also restricted squatting, lifting, bending, and crawling, as well as some sitting. R. 678–79.

Another functional capacity evaluation in May of 2006 by Barbara Suter, P.T., found Plaintiff could perform sedentary work and noted good tolerance for intermittent sitting, standing, occasional stair climbing, low level balancing, stooping, above the shoulder work, reaching forward, fine motor coordination, gripping, and pinching. R. 655–57. Suter reported minor inconsistencies between Plaintiff's subjective reports of pain and limitation, and Suter's objective findings, and said Plaintiff gave less than full effort to the examination. *Id.* By June of 2006, Brant Hotzmeier, D.O. found a permanent knee disability, but recommended non-surgical treatment – weight loss, bracing, exercise, anti-inflammatory medication, and range of motion strengthening. R. 649–51.

In February through August of 2009, three state agency doctors evaluated Plaintiff.

William S. Humphries, M.D., found Plaintiff could sit for six hours in a work day, and lift 25 lbs occasionally and 10 lbs frequently. He advised Plaintiff to avoid climbing, kneeling, crawling, heights, and hazards. R. 231–36. The other two agency physicians, Thomas Phillips, M.D., and Joseph Duckwall, M.D., evaluated Plaintiff's functional capacity. Both found Plaintiff capable of light work involving occasional balancing, stooping, crouching, and climbing ramps and stairs, but not including kneeling, crawling, climbing ladders, ropes, or scaffolds, or exposure to moderate workplace hazards and respiratory irritants. R. 237–41, 269–73.

Finally, on August 10, 2011, Dr. Gondi also evaluated Plaintiff's RFC and found her capable of low-stress jobs. He found Plaintiff could sit for at least six hours in a work day and stand and walk for less than two hours of that day, so long as she could shift positions at will – he found she could sit for 45 minutes at a time and stand for 45 minutes at a time. R. 721–25. Dr. Gondi restricted Plaintiff from carrying more than 10 lbs and from more than occasionally crouching, squatting, or climbing ladders or stairs. *Id.*

It becomes evident from reviewing these records, including Dr. Gondi's Report from 2011, that many physicians and specialists have considered *both* Plaintiff's exertional *and* nonexertional limitations, and have found her capable of performing sedentary work and more. The limitations they describe variously include: the need to shift positions during work; to alternate sitting and standing; and to avoid squatting, bending, lifting more than 10 or 20 lbs, and crawling. Substantial evidence supports the ALJ's finding that those limitations do not erode Plaintiff's ability to perform the full range of sedentary work – including the assessments of those same physicians and therapists who found that Plaintiff could perform such work. Sedentary work:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary

14

> job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).  I agree with the ALJ, Magistrate Judge, and indeed, with the many examining, treating, consulting, and reviewing medical professionals in the record, that the nature of sedentary work means Plaintiff's nonexertional limitations will not significantly affect her ability to perform that work.

As for Plaintiff's contentions that the ALJ failed to properly consider the nonexertional limitations posed by her neck, upper extremity, and knee injuries, I find these do not significantly affect her ability to perform sedentary work.  Plaintiff reports difficulty reaching and using her hands, and cites medical records diagnosing her with a herniated disc and referring to her history of chronic neck pain. R. 39, 40, 159, 181, 360–65, 555–56.  But no medical source found these problems limited Plaintiff's ability to perform the full range of sedentary work.  Dr. Humphries examined Plaintiff in 2009, noting minor indications of neck, back, and shoulder pain, and his RFC does not contain any manipulative limitations. R. 234–36.  Doctors Phillips and Duckwall examined Plaintiff in February and August of 2009, respectively, and found no manipulative limitations or limitations on Plaintiff's ability to push or pull with her upper extremities. R. 238–39, 270–71.  Even Plaintiff's treating physician, Dr. Gondi, found no manipulative limitations in his residual functional capacity evaluation in 2011.  He said Plaintiff could frequently flex her neck, turn her head, look up, and hold her head in a static position. R. 724.

Plaintiff's knee-related nonexertional limitations were also considered by each treating, examining, consulting, and reviewing medical professional.  From 2004 to 2009, when the evaluations took place, those professionals consistently released Plaintiff to everything from light to sedentary work.  In 2011, Dr. Gondi's report, based on his old treating records, found Plaintiff

15

capable of low-stress jobs, and noted Plaintiff can sit, stand, and walk, alternately for an entire work day, so long as she can shift positions about every 30–45 minutes.  R. 712–25.

The additional evidence Plaintiff cites does not affect the ALJ's functional capacity determination.  Considering this evidence as part of the record as a whole, I find substantial evidence to support the ALJ's determination that Plaintiff's nonexertional limitations do not significantly affect her ability to perform the full range of sedentary work.  Therefore, the ALJ's decision to rely on the Grids in determining that Plaintiff is not disabled is also supported by substantial evidence.

### B.  Dr. Gondi's Report

Dr. Gautham Gondi completed a residual functional capacity report ("Dr. Gondi's Report") on August 10, 2011, which Plaintiff submitted to the Appeals Council after the ALJ's decision.  This Court has considered Dr. Gondi's Report as part of the whole record before it in making its findings.  *Wilkins*, 953 F.2d 96.  Plaintiff requests that this Court remand her case to the Commissioner for consideration of that report.  As explained above, this Court cannot do so unless the report is new and material, and relates to the period on or before the date of the ALJ's decision.  *Id.*  Evidence is new if it is not duplicative or cumulative, and it is material if there is a reasonable probability the new evidence would have changed the Commissioner's decision.  *Id.* at 95–96.

I agree with the Magistrate Judge that Dr. Gondi's Report is neither new, nor material, nor makes it reasonably probable that the ALJ's decision would come out differently.  Therefore, I will not remand this case to the Commissioner for further consideration of the report.  As the Magistrate Judge explained, all the evidence Dr. Gondi used to create his report was before the ALJ when he made his RFC determination – when the ALJ found Plaintiff could perform the full

16

range of sedentary work and is not disabled. Dr. Gondi based his analysis on records ending on November 11, 2005, prior to Plaintiff's alleged disability onset date, and at that time Dr. Gondi released Plaintiff to sedentary work. R. 395. Dr. Gondi's evaluation of that same evidence certainly adds to the record before this Court. Yet, Dr. Gondi comes to many of the same conclusions as the physicians and medical professionals before him. Dr. Gondi's assessment provides nothing to call into question the ALJ's conclusion that Plaintiff can perform the full range of sedentary work. Therefore, his report is duplicative and cumulative, not new.

Furthermore, Dr. Gondi's Report is not material. Substantial evidence, described at length here, supports the ALJ's conclusion that Plaintiff can perform the full range of sedentary work. Dr. Gondi's Report provides no additional limitations that significantly diminish Plaintiff's capacity for sedentary work, as the ALJ found, and as I find. The Appeals Council also considered Dr. Gondi's report and found it provided no "basis for changing the Administrative Law Judge's decision." R. 2. The Magistrate Judge specifically noted that Dr. Gondi placed no limitations on Plaintiff's reaching, handling, fingering or flexion of the neck, nor any nonexertional limitations more restrictive than those the ALJ considered from other medical professionals. R. 721–25. Consequently, I conclude remand to the Commissioner is not warranted by Dr. Gondi's Report, as it is cumulative, duplicative, immaterial, and unlikely to have changed the Commissioner's decision in this case.

## IV. CONCLUSION

After undertaking a de novo review of those portions of the R&R to which Plaintiff objected, I find that substantial evidence supports the ALJ's conclusions. Accordingly, I will enter an Order overruling Plaintiff's Objections, adopting the Magistrate Judge's R&R in full, granting the Commissioner's Motion for Summary Judgment, denying Plaintiff's Motion for

Summary Judgment, and dismissing this action and striking it from the active docket of the Court.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge Robert S. Ballou.

Entered this 13th day of September, 2013.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE